| | |
|---|---|
| **EMANUEL MEDICAL CENTER, INC.** | : |
| **et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : |
| | : **Civil Action No. 12-1962 (GK)** |
| **KATHLEEN SEBELIUS,** | : |
| **Secretary of the United** | : |
| **States Department of Health** | : |
| **and Human Services,** | : |
| | : |
| **Defendant.** | : |
| | : |

## MEMORANDUM OPINION

Plaintiffs are two hospitals, Emanuel Medical Center ("Emanuel") and Merced Community Medical Center ("Merced") (collectively, "Plaintiffs" or "Providers"). They bring this action against Kathleen Sebelius in her official capacity as Secretary of the Department of Health and Human Services ("Defendant" or "Secretary"), pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. ("the Medicare Act"). Plaintiffs seek judicial review of a final agency decision that the Provider Reimbursement Review Board ("PRRB" or "Board") did not have jurisdiction over Providers' appeals.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [Dkt. No. 17] and Defendant's Motion for Partial Summary Judgment and for Partial Remand [Dkt. No. 22]. Upon consideration of the briefs, the administrative record, and

the entire record herein, and for the reasons stated below, Plaintiff's Motion for Summary Judgment is **granted in part and denied in part** and Defendant's Motion for Partial Summary Judgment and for Partial Remand is **granted**.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

#### 1. The Medicare Program

Title XVIII of the Social Security Act established the Medicare program, which provides medical care for the elderly and disabled. 42 U.S.C. § 1395 et seq.; see also Kaiser Found. Hosps. v. Sebelius, 708 F.3d 226, 227 (D.C. Cir. 2013) (citation omitted). The Medicare program is administered by the Secretary through the Center for Medicare and Medicaid Services ("CMS"). Ark. Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 275 (2006).

Medicare providers enter into written agreements with the Secretary to provide services to eligible individuals. 42 U.S.C. § 1935cc. Fiscal intermediaries, private companies that process payments on behalf of CMS, make interim payments to providers, subject to subsequent adjustments. Id. § 1395h.

To calculate these adjustments, providers are required to submit an annual cost report to their fiscal intermediary identifying the costs incurred during the course of each fiscal

year. 42 C.F.R. §§ 413.20, 413.24; see also Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 822 (2013) ("At the end of each year, providers participating in Medicare submit cost reports to contractors acting on behalf of HHS known as fiscal intermediaries"). Fiscal intermediaries then analyze and audit the cost report and inform the provider of the amount of total Medicare reimbursement to which they are entitled, which is referred to as the Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803; see also Regions Hosp. v. Shalala, 522 U.S. 448, 452 (1998).

If a provider is dissatisfied with the intermediary's determination of its NPR, it has 180 days to request a hearing before the PRRB. 42 U.S.C. § 1395oo(a). Review of an initial NPR is comprehensive and may include any item contained in the original cost report. Id. § 1395oo(d); Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399, 405-06 (1988) (noting that statutory language allows the Board "to review and revise a cost report with respect to matters not contested before the fiscal intermediary"). The Board can affirm, modify, or reverse the fiscal intermediary's award; the Secretary in turn may affirm, modify, or reverse the PRRB's decision. See 42 U.S.C. § 1395oo (d)-(f).

The Medicare regulations permit a fiscal intermediary to reopen a provider's cost report "with respect to findings on matters at issue" within three years. 42 C.F.R. § 405.1885(a).[2] The intermediary can reopen the cost report either on its own motion, at the request of the provider, or at the request of the CMS Administrator. Id.

After the intermediary reopens and revises the cost report, the revised NPR is considered a "separate and distinct determination or decision." Id. § 405.1889. The provider can then appeal the revised NPR to the PRRB within 180 days. Id. §§ 405.1889, 405.1835(a). Unlike the comprehensive review of an initial NPR, however, the Board's jurisdiction over a revised NPR is limited to "the specific issues revised on reopening." HCA Health Servs. of Okla., Inc. v. Shalala, 27 F.3d 614, 615 (D.C. Cir. 1994) (upholding Secretary's interpretation of reopening regulations as reasonable).

Within sixty days of notice of a final decision of the PRRB or the Secretary, a provider is entitled to file a civil action in the United States District Court for the District of Columbia to seek judicial review of that decision. 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

[2] Because all of the relevant events in this case occurred before 2008, the Court will evaluate the providers' claims under the pre-2008 regulations. All citations are to those regulations unless otherwise noted.

-4-

## 2. Disproportionate Share Hospital Adjustment

Part E of the Medicare statute sets out "Miscellaneous Provisions" including a prospective payment system for reimbursing hospitals that provide certain inpatient hospital services. 42 U.S.C. § 1395ww(d); see also Ne. Hosp. Corp. v. Sebelius, 657 F.3d 1, 3 (D.C. Cir. 2011). A hospital is reimbursed for each day spent treating a Medicaid patient, and receives additional funds if it is eligible for various hospital-specific adjustments. See 42 U.S.C. § 1395ww(d)(5); Cookeville Reg'l Med. Ctr. v. Leavitt, 531 F.3d 844, 846 (D.C. Cir. 2008).

The adjustment at issue in this case is the Disproportionate Share Hospital ("DSH") adjustment, under which the government gives additional funds to hospitals that "serve[] a significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). This adjustment is "made because hospitals with an unusually high percentage of low-income patients generally have higher per-patient costs; such hospitals, Congress therefore found, should receive higher reimbursement rates." Auburn Reg'l, 133 S. Ct. at 822; see also Catholic Health Initiatives Iowa Corp. v. Sebelius, 718 F.3d 914, 916 (D.C. Cir. 2013) (citation omitted).

Whether a hospital qualifies for this adjustment, and the amount of the adjustment the hospital receives, depends on the hospital's "disproportionate patient percentage" ("DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v); Ne. Hosp. Corp., 657 F.3d at 3. The DPP "is not the actual percentage of low-income patients served; rather, it is an indirect, proxy measure for low income." Catholic Health Initiatives, 718 F.3d at 916.

The DPP, as defined by the Medicare statute, is calculated by adding together two fractions: the SSI fraction. In sum, the Medicaid fraction. 42 U.S.C. § 1395ww(d)95)(vi); Metro. Hosp. v. Dep't of Health & Human Servs., 712 F.3d 248, 251 (6th Cir. 2013). The basic unit of measurement for both fractions is the hospital's "patient days." Metro Hosp., 712 F.3d at 251.

The SSI fraction, also known as the "Medicare fraction," "measures the portion of a hospital's Medicare-entitled patient population that is also entitled to [Supplemental Security Income ("SSI")], a cash benefit provided to low-income elderly, blind, or disabled individuals." Id.; see also Auburn Reg'l, 133 S. Ct. at 822.

The SSI fraction for a given period consists of the number of patient days attributable to patients entitled to both Medicare Part A benefits and SSI benefits divided by the number of patient days attributable to patients entitled to Medicare

-6-

Part A benefits but <u>not</u> SSI benefits. 41 U.S.C. § 1395ww(d)(5)(vi)(I). The Secretary receives data from the Social Security Administration to calculate the SSI fraction and provides the fraction to the intermediary. <u>Auburn Reg'l</u>, 133 St. Ct. at 822; 42 C.F.R. § 12.106(b)(2), (3).

The Medicaid fraction "measures the proportion of a hospital's total patient population that is Medicaid-eligible, with the caveat of excluding patients who are also entitled to Medicare benefits." <u>Metro Hosp.</u>, 712 F.3d at 251. The Medicaid fraction for a given period consists of the number of patient days attributable to patients eligible for a state Medicaid plan but not entitled to Medicare Part A benefits, divided by the total number of patient days in that period. 42 U.S.C. § 1395ww(d)(5)(vi)(II).[3] The Medicaid fraction is calculated by the intermediary. 42 C.F.R. § 412.106(b)(4).

The intermediary then adds the SSI fraction and the Medicaid fraction and that sum, expressed as a percentage, is the hospital's DPP for that period. <u>Id.</u> § 412.106(b)(5). The higher the DPP, the higher the rate at which the hospital is reimbursed. <u>Catholic Health Initiatives</u>, 718 F.3d at 916 ("[A]

_____

[3] Medicaid is a separate program from Medicare. It is "a jointly funded, federal-state program that provides health care to indigent persons who are aged, blind, or disabled, or members of families with dependent children." <u>See</u> <u>Univ. of Kansas Hosp. Auth. v. Sebelius</u>, 953 F. Supp. 2d 180, 183 n.1 (D.D.C. 2013) (citing 42 U.S.C. § 1396 <u>et seq.</u>).

higher DPP means greater reimbursements because the hospital is serving more low-income patients."); Metro. Hosp., 712 F.3d at 251 ("A higher DPP produces a higher adjustment percentage, which in turn produces a larger adjustment payment.") (citation omitted).

### B.    Factual and Procedural History

Plaintiffs are two hospitals located in California. Administrative Record ("AR") 80-81. It is undisputed that Plaintiffs are "providers of services" participating in the Medicare program. This case concerns three cost reports: Merced's cost reports for fiscal year 1991 and 1992 and Emanuel's cost report for fiscal year 1992.

### 1.    Merced's Cost Report for Fiscal Year 1992

On August 23, 1994, Merced received its NPR from its fiscal intermediary for fiscal year 1992. AR 27-28. It included a DSH adjustment of $1,576,346. AR 30. On November 5, 1996, Merced requested that its intermediary reopen that cost report "to include the submitted information in its determination of the revised Disproportionate Share Calculation." AR 32. It sought to increase its DSH adjustment by an additional $1,075,578. Id.

On February 5, 1997, the intermediary notified Merced that it was reopening Merced's cost report for fiscal year 1992 "[t]o agree Medi-Cal days to those audited by the State, and to

recompute DSH accordingly." AR 44. On its adjustment report, the intermediary described the purpose of the adjustment as: "TO AGREE MEDI-CAL DAYS TO AUDITED DATA" and "TO CORRECT DSH TO BE BASED ON AUDITED MEDI-CAL & TOTAL DAYS, & FEDERAL DRG PAYMENTS." AR 46. The intermediary increased Merced's DSH adjustment by the amount Merced had requested, $1,075,578. Id. The revised NPR was issued on March 10, 1997. AR 652.[4]

On September 8, 1997, Merced appealed its revised NPR for fiscal year 1992 to the PRRB. AR 655-56. Among other things, it argued that "the Supplemental Security Income (SSI) ratio used in determining the Disproportionate Share Payment was incorrect" and that "the Medi-Cal ratio used in determining the Disproportionate Share Payment was incorrect." AR 655.

## 2. Emanuel's Cost Report for Fiscal Year 1992

On October 6, 1995, Emanuel's fiscal intermediary reopened Emanuel's cost report for fiscal year 1992. AR 347-48. The notice of reopening states that it was reopened "TO REVISE THE DISPROPORTIONATE SHARE ADJUSTMENT AND TO UPDATE THE SETTLEMENT, IF APPLICABLE." AR 347. The adjustment report showed an increase in Emanuel's DSH adjustment from $1,315,799 to $1,388,806. AR 353.

---

[4] The Court notes that Merced received the entire additional amount it sought in its request for reopening.

On November 9, 1995, Emanuel appealed its revised NPR for fiscal year 1992 to the PRRB. AR 350-51. It alleged that the DSH adjustment was understated because "determination of the number of patient days relating to patients entitled to <u>both</u> Medicare Part A coverage and Supplemental Security Income (SSI) benefits was understated" and "[t]he ratio of Medi-Cal days to total patient days was in error." AR 351 (emphasis in original).

### 3. Merced's Cost Report for Fiscal Year 1991

On April 30, 1999, Merced's fiscal intermediary reopened Merced's cost report for the fiscal year ending 1991 on its own motion and increased Merced's DSH adjustment. AR 631-32. The revised NPR increased the DSH adjustment from $1,353,189 to $2,508,403, and described the adjustment as "incorporat[ing] the Medi-Cal audited days." AR 637.

On October 14, 1999, Merced appealed its revised NPR for fiscal year 1991 to the PRRB. AR 634-35. Again, Merced argued that "the Supplemental Security Income (SSI) ratio used in determining the Disproportionate Share Payment was incorrect" and that "the Medi-Cal ratio used in determining the Disproportionate Share Payment was incorrect." AR 635-35.

### 4. SSI Group Appeal

On October 7, 1996, two providers requested a group appeal before the PRRB to address the common issue of "[w]hether the

SSI percentage (proxy) used to compute Medicare Disproportionate Share (DSH) Payments has been determined in accordance with the Medicare statutes [sic]." AR 1254. The group appeal was given the Case No. 97-0021G, and eventually grew to include nine hospitals seeking review of the SSI fraction used in 26 cost reports (hereinafter, "SSI Group Appeal"). AR 3-5, 1161.

On December 9, 1996, Emanuel requested that the Board transfer the "SSI percentage issue" from its appeal of its revised NPR for fiscal year 1992 to the SSI Group Appeal. AR 362. The issue was transferred on July 31, 1997. AR 930.

On April 1, 1998, Merced requested that the Board transfer "the SSI Percentage issue" from its appeal of its revised NPR for fiscal year 1992 to the SSI Group Appeal. AR 1144. The issue was transferred on that date. AR 930.

On October 27, 2000, Merced requested that the Board transfer "the SSI ratio issue" from its appeal of its revised NPR for fiscal year 1991 to the SSI Group Appeal. AR 1169.

On January 23, 2004, an intermediary challenged the Board's jurisdiction to hear six of the appeals that had been consolidated in the SSI Group Appeal. AR 1104-1109. The Board's jurisdiction over the three appeals at issue in this case was not raised at that time. On June 1, 2004, the providers

responded that they were "in the process of researching the challenges and providing a response." AR 924.

On March 31, 2008, Judge John Bates, in a different case, upheld the PRRB's determination that CMS had been erroneously calculating the SSI fractions used in calculating provider's DSH adjustments. Baystate, 545 F. Supp. 2d at 57-58; see also Auburn Reg'l, 133 S. Ct. at 822-23 (discussing Baystate case). He remanded the case to the Secretary for appropriate action. Baystate, 545 F. Supp. 2d at 58.

In response, the CMS Administrator issued CMS Ruling 1498-R on April 28, 2010. CMS Ruling No. CMS-1498-R, 2010 WL 3492477 (Apr. 28, 2010). The Administrator directed CMS and the Medicare contractors to "take the steps necessary to apply a suitably revised data matching process in determining the SSI fraction, and recalculating the DSH payment adjustment, for each properly pending claim on the SSI fraction data matching process issue that is remanded by an administrative appeals tribunal and is found to qualify for relief under this Ruling." Id. at *3. It is undisputed that the SSI Group Appeal presented a "pending claim on the SSI fraction data matching process issue." Id.

On March 9, 2012, the Board wrote a letter to the SSI Group Appeal members asking for jurisdictional documentation regarding the six previously-challenged appeals and also requesting

jurisdictional documentation for fourteen other appeals that had joined the SSI Group Appeal. AR 906-909. Among other things, it requested jurisdictional documentation from providers appealing from revised NPRs, including Merced for fiscal year 1991 and Emanuel for fiscal year 1992. AR 907. On August 8, 2012, the Board asked for similar jurisdictional documentation from Merced for fiscal year 1992 because that appeal was also from a revised NPR. AR 64-65.

On July 30, 2012, the PRRB issued its first jurisdictional decision, in which it addressed its jurisdiction over the six appeals challenged by the intermediary in 2004. These six appeals did not include the appeals at issue in this case. AR 66-72. The Board noted that the providers could not show that the SSI fraction had been adjusted in their original NPRs. AR 70-71. However, because the providers were appealing from original NPRs, not revised NPRs, the Board concludes that it had jurisdiction over any issue, even if that issue had not been included in the original NPR or decided against the provider by the intermediary. Id. (citing Bethesda, 485 U.S. at 404). Thus, the Board concluded that an adjustment to the SSI fraction was "not a prerequisite to the appeal" of original NPRs. AR 72.

On October 5, 2012, the Board issued its second jurisdictional decision, which is the decision at issue in this

-13-

case. AR 22-24 ("Jurisdictional Decision"). The Board held that it did not have jurisdiction over four appeals from revised NPRs, including Emanuel's appeal for fiscal year 1992 and Merced's appeals for fiscal years 1991 and 1992. Id. The Board reasoned that it did "not have jurisdiction over these four Providers because the Providers are appealing from revised [NPRs] which did not specifically adjust the SSI% issue." AR 22.

### 5. Judicial Review

As permitted by 42 U.S.C. § 1395oo(f), Plaintiffs timely filed this Complaint challenging the Board's Jurisdictional Decision on December 6, 2012 [Dkt. No. 1]. On May 31, 2013, Plaintiffs filed their Motion for Summary Judgment ("Pls.' Mot.") [Dkt. No. 17]. On July 16, 3013, Defendant filed her Motion for Partial Summary Judgment and Partial Remand, and Opposition to Plaintiffs' Motion ("Def.'s Opp'n") [Dkt. Nos. 22, 23]. Plaintiffs then filed their Opposition and Reply on August 30, 2013 ("Pls.' Reply") [Dkt. Nos. 27, 28], and Defendant filed her Reply on November 6, 2013 [Dkt. No. 31] ("Def.'s Reply"). The administrative record was filed on July 24, 2013 [Dkt No. 26], and this matter is now ripe for review.

### 6. Secretary's Stipulation

In the Secretary's Motion, she included newly-discovered evidence that Emanuel's SSI fraction was changed in its revised

NPR for fiscal year 1992. Def.'s Opp'n at 30-31 (discussing a 1995 letter to Emanuel stating that the wrong SSI percentage had been used in the original NPR). On that basis, she concedes that Emanuel's SSI fraction was adjusted in its revised NPR. Moreover, Emanuel's appeal of its revised NPR challenged its intermediary's determination of "the number of patient days relating to both Medicare Part A coverage and Supplemental Security Income (SSI) benefits." AR 351 (emphasis in original). For these reasons, the Secretary is now conceding that Emanuel filed a timely appeal of an issue reopened and adjusted in its revised NPR, and, therefore, the Board had jurisdiction over Emanuel's appeal. Def.'s Opp'n at 30.

The Secretary requests a remand of Emanuel's appeal to the agency so that the agency can grant Emanuel's requested relief: "a remand to the Intermediary in accordance with CMS Ruling CMS-1498-R." Def.'s Opp'n at 30 (quoting Complaint at 9). Because the agency has not yet addressed the merits of Emanuel's appeal, this Court does not have jurisdiction over the merits and remand is the appropriate course of action. Palisades Gen. Hosp. Inc. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005) (holding that district court's jurisdiction was "only to vacate the Secretary's decision . . . and to remand for further action consistent with its opinion"); PPG Indus., Inc. v. United

-15-

States, 52 F.3d 363, 366 (noting that agency can reopen proceedings to take new evidence after reviewing court has found agency's original findings invalid).

Therefore, the Court **remands** Emanuel's appeal of its revised NPR for fiscal year 1992 to the agency for action consistent with this opinion, and will now turn to the Board's decision that it lacked jurisdiction over Merced's appeals for fiscal years 1991 and 1992.

## II.  STANDARD OF REVIEW

The Medicare Act provides for judicial review of a final decision made by the PRRB or the Secretary. 42 U.S.C. § 1395oo(f)(1). It instructs the reviewing court to apply the provisions of the Administrative Procedure Act ("APA"), which instructs the courts to be "highly deferential" in their review of agency action. Bloch v. Powell, 348 F.3d 1060, 1070 (D.C. Cir. 2003) (citations and internal quotation marks omitted).

Under the APA, an agency decision is set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and its factual findings are only overturned if "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); see also Murray Energy Corp. v. F.E.R.C., 629 F.3d 231, 235 (D.C. Cir. 2011) (quotation and citation omitted). "[A]lthough the Board's adherence to Medicare regulations is

-16-

reviewable under the arbitrary and capricious standard, and the sufficiency of the Board's record is reviewable under the substantial evidence standard, the two standards involve the same level of scrutiny." Mem. Hosp./Adair Cty. Health Ctr. Inc. v. Bowen, 829 F.2d 111, 117 (D.C. Cir. 1987).

The arbitrary and capricious standard is satisfied if the agency has "considered the factors relevant to its decision and articulated a rational connection between the facts found and the choice made." In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig., 709 F.3d 1, 8 (D.C. Cir. 2013) (quoting Keating v. F.E.R.C., 569 F.3d 427, 433 (D.C. Cir. 2009)).

**III. ANALYSIS**

## A. The Secretary's Issue-Specific Interpretation of the Reopening Regulations Is Reasonable and Entitled to Deference

The parties agree that our Court of Appeals' decision in HCA Health Services of Oklahoma v. Shalala, 27 F.3d 614 (D.C. Cir. 1994), is the appropriate starting point. In HCA, an intermediary reopened a hospital's NPR on five specific issues. Id. at 616. The hospital then sought to appeal its intermediary's decision on those issues to the Board, as well as an additional issue "which had been decided in the original NPR but never revisited since." Id. The Board concluded that it did

-17-

not have jurisdiction over the hospital's appeal of that additional issue because its jurisdiction was limited to reviewing only the specific issues adjusted by the revised NPR. Id.

In reviewing the Board's conclusion, the Court of Appeals analyzed the Secretary's "issue-specific" interpretation of its reopening regulations under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984). HCA, 27 F.3d at 617 (summarizing Chevron framework). Chevron requires a two-step analysis. The court must first determine whether "Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. If Congress has not, the court will then defer to the agency's interpretation of the regulations if it "is based on a permissible construction of the statute." Id.

Applying this framework, the HCA Court first examined the Medicare statute to see if Congress had "directly spoken" to the scope of the Board's jurisdiction over revised NPRs. HCA, 27 F.3d at 617-19. The Court of Appeals concluded that Congress had not addressed the issue because the statute did "not specifically address either reopenings of an NPR by an

-18-

intermediary or review of such a reopening by the Board[.]" Id. at 619.[5]

The Court of Appeals then turned to the second step of the Chevron framework and evaluated whether the agency's interpretation of the regulations was permissible. It observed:

> In light of the explicit language in 42 C.F.R. § 405.1885 limiting reopenings to "findings on matters at issue in [the original NPR]" and in 42 C.F.R. § 405.1889 characterizing revisions as "separate and distinct determination[s]" for purposes of Board appeals, we do not think it impermissible for the Secretary to interpret the "intermediary determination" on reopening as limited to the particular matters revisited on the second go-round.

Id. at 620. The Court of Appeals also noted that the Secretary's interpretation of the reopening regulations was "particularly persuasive" because it preserved the statute's 180-day time period for filing appeals from the intermediary's original NPR. Id. at 620-21.

Based on this application of the Chevron framework, the Court of Appeals upheld the agency's interpretation of its regulations to deny the Board jurisdiction over appeals from revised NPRs that raised issues that were not the "subject of

---

[5] Merced argues that "Congress has made its intent clear" that a provider's DSH adjustment is one issue and cannot be subdivided. Pls.' Reply at 5. The HCA Court's holding that the Medicare statute does not address reopenings of NPRs binds this Court and forecloses Merced's argument. HCA, 27 F.3d at 619 (concluding that Medicare statute does not "address either reopenings of an NPR by an intermediary or review of such a reopening by the Board").

the reopening." Id. at 622 ("Given that no specific statutory provision governs reopenings, and that the Secretary's interpretation of the reopening regulations is a permissible reading of the regulatory language and implements the statutory time restriction on appeals from an intermediary's determination of the amount of total program reimbursement, we uphold the Board's determination that it lacked jurisdiction to review cost items that were not the subject of the reopening.").

The HCA decision remains the law in this Circuit,[6] and the Secretary's issue-specific interpretation of the regulations has been upheld by all other Circuits to address it. See Hennepin Cnty. Med. Ctr. v. Shalala, 81 F.3d 743, 749 (8th Cir. 1996) ("The reopening regulation has been in place for many years and is in accord with the agency's authority under the Medicare Act."); French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1420 (9th Cir. 1996) ("Limiting the PRRB's scope of review to issues the fiscal intermediary reconsidered upon reopening the NPR is

---

[6] Merced argues that the concurring opinions written by Justices Scalia, Roberts, and Alito in Decker v. Nw. Envtl. Def. Ctr., 133 S. Ct. 1326, 1341 (2013), invite this Court to re-evaluate the Secretary's interpretation of her regulations with less deference. Pls.' Reply at 17-18. The majority opinion of the Decker Court reaffirmed that an agency's interpretation was entitled to deference. Id. at 1337. Therefore, nothing in Decker's concurrences undermines the binding determination of our Court of Appeals in HCA that the Secretary's issue-specific interpretation of her regulations is reasonable and entitled to deference.

consistent with the Medicare regulation governing the treatment of reopenings or revisions on appeal."); Edgewater Hosp., Inc. v. Bowen, 857 F.2d 1123, 1134 (7th Cir. 1988).

Thus, it is clear that in this Circuit, as well as in the three others that have addressed the issue, the Secretary's "issue-specific" interpretation of her NPR reopening regulations is reasonable and entitled to substantial deference.

### B. The Board's Jurisdictional Decision Is Not Arbitrary or Capricious

In its Jurisdictional Decision, the Board began its analysis with the HCA decision, reiterating that its jurisdiction over revised NPRs was limited to "specific issues revisited on reopening." AR 23 (citing HCA, 27 F.3d 614). The Board then found that Merced had failed to "submit the documentation to show that the revised NPRs specifically adjusted" Merced's SSI fractions. AR 23. Consequently, the Board concluded that it lacked jurisdiction over Merced's appeals of the SSI fractions used in their revised NPRs. Id.

All of the record evidence fully supports the Board's conclusion that the SSI fraction was not adjusted, and Merced has identified no evidence to the contrary. For both fiscal years at issue, the intermediary's reopening documents show that Merced's cost reports for fiscal year 1991 and 1992 were

reopened to include additional "Medi-Cal Days." AR 46 (reopening "to correct DSH to be based on Audited Medi-Cal & Total Days & Federal DRG Payments"); AR 637 (reopening "to modify the DSH adjustment to incorporate the Medi-Cal audited days").[7]

As discussed above, the Medicaid fraction requires calculating the number of patient days made up of patients eligible for a state Medicaid plan, such as Medi-Cal. See 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II); see also Banner Health v. Sebelius, 715 F. Supp. 2d 142, 156 (D.D.C. 2010) ("[F]or a patient to be 'eligible for medical assistance under a State plan approved under [Medicaid],' 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II), the patient must be eligible for Medicaid payment under the approved State Medicaid plan."). The SSI fraction, however, does not include state Medicaid patient days, but considers only individuals entitled to Medicare benefits and SSI benefits. Id. § 1395ww(d)(5)(F)(vi)(I); see also Metro Hosp., 712 F.3d at 262-63 (finding it "clear from the statute" that the two fractions are "exclusive of one another," and, thus, that the statute should be interpreted to avoid "double-counting" patient days by including them in both

---

[7] Medi-Cal is the Medicaid program offered by California. See Grossmont Hosp. Corp. v. Sebelius, 903 F. Supp. 2d 39, 45 (D.D.C. 2012) ("California participates in the Medicaid program by operating a State program commonly known as Medi-Cal."); see also Cal. Welf. & Inst. Code § 14000.4.

-22-

fractions of the DPP). The addition of Medicaid patient days would have no effect on the SSI fraction and the Board's conclusion that the SSI fractions were not adjusted is amply supported by the evidence in the record.[8]

Merced argues that the Board's conclusion was arbitrary or capricious for a number of reasons. The Court will briefly address them in turn.[9]

---

[8] Merced argues that the only evidence that the SSI fraction was adjusted would be in the "sole possession" of the agency, and that requiring providers to identify that information puts them in a "Catch-22." Pls.' Mot. at 25. Unlike Atlanta College of Med. & Dental Careers, Inc. v. Riley, 987 F.2d 821, 831 (D.C. Cir. 1993), the agency has not requested documents from Merced to which Merced does not have access. Rather, the relevant documents are in the record and simply do not support a finding that the SSI fraction was reconsidered or adjusted. See Baptist Mem'l Hosp. v. Sebelius, 765 F. Supp. 2d 20, 30-31 (D.D.C. 2011) (upholding Board's determination that it did not have jurisdiction over provider's appeal when "appeal provided no document trail demonstrating that it specifically raised the exclusion of expansion waiver days"), aff'd sub nom. Baptist Mem'l Hosp., Inc. v. Sebelius, No. 11-5112, 2012 WL 1859132 (D.C. Cir. May 14, 2012).

[9] As a preliminary matter, Merced argues that the Secretary is estopped from denying jurisdiction over Merced's appeals because the "intermediary's stipulation that there are no jurisdictional impediments to an appeal on the SSI fraction amounts to an admission that the SSI fraction was reconsidered in the reopening." Pls.' Mot. at 24; Pls.' Reply at 19. Even if the intermediary had made such a stipulation, the intermediary's assertion would not bind the Secretary. As our Court of Appeals has stated, "the intermediary's position is not the Secretary's -- it is the Board's interpretation that matters." Appalachian Reg'l Healthcare, Inc. v. Shalala, 131 F.3d 1050, 1053 n.4 (D.C. Cir. 1997) (emphasis added); see also Medcenter One Health Sys. v. Sebelius, 635 F.3d 348, 351 (8th Cir. 2011) ("[T]he intermediary's position before the PRRB does not bind HHS, which was not a party to the PRRB proceedings."). Thus, any concession

-23-

First, Merced argues that even if its SSI fractions were not _modified_ on reopening, they were _reconsidered_ when the intermediary recalculated Merced's DSH adjustment. It insists that this Court must thus decide the question left open in HCA: "whether a cost item must be modified on reopening or need only be reconsidered on reopening in order to become appealable to the Board." HCA, 27 F.3d at 621.

The Court need not resolve this open question because there is no evidence that the SSI fraction used in Merced's NPRs was reconsidered in either fiscal year 1991 or 1992. Id.; see also French Hosp. Med. Ctr. v. Shalala, 89 F.3d 1411, 1419-20 (9th Cir. 1996) (finding that no jurisdiction existed over appeal where intermediary "neither reconsidered the [routine cost limits] components nor adjusted them").

Merced's fiscal intermediary reopened and adjusted Merced's cost report for fiscal year 1991 on its own initiative in order to incorporate Medi-Cal audited days. AR 631-32, 637. This is identical to the situation in HCA, where "[t]he reopening . . . was initiated solely by the intermediary and the intermediary's notices of reopening made no reference whatsoever to the cost items which the provider now wishes to add to its hearing before the Board." HCA, 27 F.3d at 621.

by the intermediary about these appeals has no effect on the appropriateness of the Board's determination in this case.

Merced requested that its intermediary reopen its cost report for fiscal year 1992 "to include the submitted information in its determination of the revised Disproportionate Share Calculation." AR 32. In the "submitted information," Merced included documents supporting its claim for additional Medi-Cal days, which were to be included in the Medicaid fraction. AR 36-38. It also submitted a worksheet recalculating its DSH adjustment using the same SSI fraction as its original NPR. AR 33, 35. Thus, there is no evidence that the intermediary reconsidered the SSI fraction when it reopened Merced's NPR for either fiscal year 1991 or 1992.[10] See Little Company of Mary Hospital v. Sebelius, 587 F.3d 849, 855-56 (7th Cir. 2009) (upholding Board's determination that it lacked jurisdiction over appeals of revised NPR where there was no evidence that intermediary had taken any "affirmative action sufficient to consider the issue reopened").

Second, in an effort to compensate for its failure to show that the intermediary reconsidered its SSI fraction, Merced argues that a change to any element of the DSH adjustment

[10] Moreover, the specific language of the revised NPRs contradicts Merced's assertion that "the issue revisited on reopening was 'the DSH payment,' not some more narrow aspect of the DSH calculation." Pls.' Mot. at 16. Because it misconstrues the record, Merced's argument that it is entitled to broad appellate rights based on the broad language in the NPRs lacks merit.

requires recalculation of the entire DSH adjustment. This recalculation, Merced insists, requires the intermediary to "revisit" all of the other elements that make up the DSH adjustment, making all of those elements appealable to the Board. Pls.' Mot. at 14, 25.

Merced identifies no authority that supports its argument.[11] Indeed, a number of courts have rejected this approach and held that revision of one element of a larger calculation does not mean that all of the other elements of that calculation were "reconsidered." See Anaheim Mem'l Hosp. v. Shalala, 130 F.3d 845, 851 (9th Cir. 1997) (upholding Secretary's conclusion that reopening a cost report to apply a routine cost limit ("RCL") to one cost item does not give the Board jurisdiction to hear challenges to other components of the RCL); French Hosp., 89 F.3d at 1421-22 (rejecting argument that "mere application" of RCL constitutes either reconsideration or adjustment of RCL); Baptist Memorial Hosp. v. Sebelius, 768 F. Supp. 2d 295, 300-01 (D.D.C. 2011) (upholding Secretary's conclusion that Board's

---

[11] The one case cited by Merced, Zia Hospice, Inc. v. Sebelius, 723 F. Supp. 2d 1347, 1354 (D.N.M. 2010), is distinguishable for a number of reasons. The Court will only note the most significant distinction -- it was undisputed in Zia that the issue the provider wished to appeal to the Board was the "only item reconsidered, revisited, or reviewed" when the provider's cost report was reopened. Id. Because it was undisputed that the issue was reconsidered on reopening, Zia provides no guidance in this case.

jurisdiction was limited to cost items exceeding the RCL that had been affected by revised NPR).

Merced tries to distinguish these cases by arguing that the RCLs affect "almost every cost item a provider would submit for reimbursement," whereas the DSH adjustment is only "one calculation, with one purpose." Pls.' Reply at 21. This argument is unpersuasive. The DSH adjustment, like the RCL, involves numerous pieces of data and several distinct calculations. See 42 U.S.C. § 1395ww(d)(5) (setting out the DSH adjustment in 12 sections and over 50 subsections); see also Catholic Health Initiatives, 718 F.3d at 916-17 (describing language of DPP as "downright byzantine" and "not easily discernible"). Thus, this Court is not persuaded that the recalculation of one element of the DSH adjustment means that all of the other elements have been "reconsidered."

In sum, Merced has not identified evidence that the SSI fraction was actually reconsidered when its cost reports for fiscal year 1991 and 1992 were reopened, nor has it persuaded the Court that any change to a DSH adjustment is sufficient to establish that all of the elements of the DSH adjustment have been reconsidered. Therefore, Merced has failed to establish that its appeals are meaningfully distinguishable from those in HCA.

Third, Merced argues that the Secretary's application of her issue-specific standard to the issue of DSH adjustments is so inconsistent as to make it arbitrary and capricious. Merced is correct that "[a]n agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." Indep. Petroleum Ass'n of America v. Babbitt, 92 F.3d 1248, 1258 (D.C. Cir. 1996). However, Merced has failed to identify any significant evidence of inconsistency. P.I.A. Michigan City Inc. v. Thompson, 292 F.3d 820, 826 (D.C. Cir. 2002) (noting that "an appellant complaining of inconsistency and capriciousness in the agency's explanation of its treatment [must] bring before the reviewing court sufficient particulars of how the appellant was situated, how the allegedly favored party was situated, and how such similarities as may exist dictate similar treatment and how such dissimilarities as may exist are irrelevant or outweighed").

Neither the agency decisions[12] nor the sub-regulatory guidelines issued by the agency[13] cited by Merced establish that

---

[12] The first Board decision cited by Merced was reversed by the CMS Administrator, who noted that the only issue "open for appeal" was the issue "decided pursuant to the revised NPR." Cmty. Hosp. of the Monterey Peninsula v. Blue Cross Blue Shield Assoc., 2006 WL 1684658, at *3 (H.C.F.A. Admin. Dec. Mar. 15, 2006) (reversing Cmty. Hosp. of the Monterey Peninsula v. Blue Cross Blue Shield Assoc., Case No. 01-2940, 2006 WL 752462 (P.R.R.B. Jan. 19, 2006). The other two Board decisions cited by Merced, Alina 95 Medicare DSH Medicaid Eligible Patient Days

the agency has acted inconsistently in its application of the

reopening regulations to DSH adjustments. Merced has failed to

identify any meaningful example of a "similar case" not being

resolved "in a similar manner" and has thus failed to establish

that the agency's treatment of this issue is so inconsistent as

to make it arbitrary and capricious. Indep. Petroleum, 92 F.3d

at 1258.

Based on the above analysis, the Court concludes that the

agency "considered the factors relevant to its decision and

articulated a rational connection between the facts found and

the choice made." In re Polar Bear Litig., 709 F.3d at 8

(quotation and citation omitted). Thus, the Board's decision was

Group, Case No. 02-2262G, and Legacy Emanuel Hospital and Health
Center, Case No. 06-1702, are unpublished and were never
submitted to the Court.

As to the Board's treatment of Community Hospital of
Monterey Peninsula ("CHOMP")'s appeal in the SSI Group Appeal,
the Board reversed its jurisdictional decision once it
discovered that CHOMP's initial NPR did not include a DSH
adjustment. AR 7-8. This is materially different from Merced's
appeals, where its entitlement to a DSH adjustment was not in
question and its SSI fractions were simply reapplied in its
revised NPRs.

[13] The portion of the Provider Reimbursement Manual cited by
Merced does not "instruct[] intermediaries and providers to
consider the DSH adjustment as a single issue," as Merced
suggests. Pls.' Reply at 13. It describes the item that should
be included on a line of a particular form -- it does not state
that each entry on that form must be treated as an indivisible
issue. CMS, Provider Reimbursement Manual Chapter 24 § 2418.1
(setting out directions for completing the Health Care Complex
Cost Report Form HCFA 2552-89).

not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

**V.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **granted in part and denied in part** and Defendant's Motion for Partial Summary Judgment and for Partial Remand is **granted**. Emanuel's appeal of its revised NPR for fiscal year 1992 shall be remanded to the agency for appropriate resolution.

An Order shall accompany this Memorandum Opinion.

April 17, 2014

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF